[Dkt. Ents. 23, 27, 39]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| GLOUCESTER TOWNSHIP HOUSING AUTHORITY,<br><br>        Plaintiff,<br><br>              v.<br><br>FRANKLIN SQUARE ASSOCIATES and SHAUN DONOVAN,<br><br>        Defendants. | Civil No. 12-CV-953(RMB/AMD)<br><br>**OPINION** |

Appearances:

Gregory Bevelock
Alice M. Penna
Decotiis, Fitzpatrick & Cole LLP
Glenpointe Centre West, Suite 31
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666
    Attorneys for Plaintiff Gloucester Township Housing
    Authority

Timothy J. Higgins
1040 North Kings Highway, Suite 300
Cherry Hill, New Jersey 08034

Mark Valponi – *Pro Hac Vice*
Michael J. Zbiegien, Jr. – *Pro Hac Vice*
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
    Attorneys for Defendant Franklin Square Associates

Kyle A. Forsyth
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
    Attorney for Defendant Shaun Donovan, Secretary of the
    United States Department of Housing and Urban Development

**BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff Gloucester Township Housing Authority ("GTHA") brings this action seeking a declaration of its rights and obligations under a three-party contractual relationship with Defendants Franklin Square Associates ("Franklin") and the Department of Housing and Urban Development ("HUD"). The Court has sua sponte raised the question of whether it has subject matter jurisdiction over any of the claims in this case. For the reasons that follow, the Court finds it has jurisdiction over the claims against HUD pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1404a, and the claims between Franklin and GTHA pursuant to 28 U.S.C. § 1367. In light of this finding, the Court reopens HUD's pending motions to dismiss and dismisses them without prejudice as premature.

### I. Background.

#### A. The Section 8 Housing Program.

In an effort to assist low-income families with obtaining adequate housing, Congress amended the Housing Act of 1937 to create the Section 8 housing program, which offers subsidies to private landlords that rent to low-income tenants. See 42 U.S.C.

§ 1437f ("Section 8"); (GTHA's Complaint (hereinafter "Compl."), Dkt. Ent. 1 ¶¶ 2, 3, 16). Through this program, tenants pay rent calculated upon their income and ability to pay, while HUD provides an assistance payment to the landlord intended to account for the difference between the tenant's payment and the contract rent agreed upon by the landlord and HUD. (Compl. ¶ 17.) Under the statute, this contract rent must be based upon the fair market rental value of the property. (Id. (citing 42 U.S.C. § 1437f(c)(1)).)

These assistance payments are provided through a housing assistance payment contract ("HAP Contract"), which HUD may enter into directly with the landlord. (Id. ¶¶ 18-19.) Alternatively, as is the case here, HUD provides funds to a state or local public housing agency ("PHA") that, in turn, subsidizes low-rent landlords, thereby allowing HUD to avoid entering into contracts directly with the landlords. (Id. ¶ 20.)

In the latter situation, HUD first enters into an annual contributions contract (the "ACC") with the PHA, through which HUD agrees to pay the PHA to subsidize Section 8 housing. (Id.) The PHA then enters into a HAP Contract with a landlord, through which it agrees to pay the landlord to maintain low rents. (Id.) HUD provides the HAP Contract language and signs its approval of the final contract between the PHA and the landlord, although HUD is not a party to the HAP Contract. (See id. ¶¶ 21-22.) The

3

PHA is also obligated to administer the HAP Contract in accordance with HUD's regulations. (Id. ¶ 25.)

As real estate prices rise, the landlords periodically request to be paid more by the PHA. The HAP Contract allows for rent increases "to reflect changes in the fair market rentals established in the housing area[.]" (Id. ¶ 45 (citing 42 U.S.C. § 1437f(c)(2)(A) & (C)).) However, this provision is subject to a limitation: rent increases "shall not result in material differences between the rents charged for assisted and comparable unassisted units, *as determined by HUD*." (Id. ¶ 49 (citing HAP Contract § 2.7(d))(emphasis in original).) This provision allows for HUD to regulate the process of increasing rents. (Id. ¶ 51.)

**B.   Congress' 1994 Amendments to Section 8.**

In 1994, Congress amended Section 8 to alter the manner in which rent adjustments were calculated and placed the onus on private landlords to prove entitlement to a rent adjustment. (See id. ¶¶ 53-56.) In response, HUD issued new rules and procedures for landlords to follow when seeking adjustments. (Id. ¶ 54.) According to HUD's new rules, landlords seeking increased rents would have to first consult a guideline published by HUD of fair market rents in their area. (Id. ¶¶ 53, 56-57.) If the landlords' current contract rents exceeded these fair market rents, then the landlords would be required to

4

submit a study, known as a rent comparability study, demonstrating that comparable unassisted rents were greater than the landlords' current contracts. (Id. ¶¶ 57-58.) Only then would HUD increase rents. (Id. ¶ 58.) After the 1994 amendments, landlords across the country filed suits against HUD seeking rent increases and arguing that the post-1994 rules conflicted with the terms of their HAP Contracts. See, e.g., One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., No. 12-1952, 2013 U.S. App. LEXIS 9678, at *18 n.5 (1st Cir. May 14, 2013)(collecting cases). Defendant Franklin, a private company, is one of these aggrieved landlords. (Compl. ¶¶ 7, 10.)

    **C.**    **Franklin's HAP Contract Dispute with GTHA and HUD.**

GTHA is a PHA created by Gloucester Township, New Jersey. (Id. ¶ 9.) On August 22, 1977, GTHA's predecessor entered into an ACC with HUD regarding a housing complex owned by Franklin. (Id. ¶¶ 26, 28, 35.) Upon completion of the complex, Franklin entered into a HAP Contract with GTHA that obligated GTHA to make housing assistance payments to Franklin out of funds that it received from HUD pursuant to the ACC with HUD. (Id. ¶ 36.) The HAP Contract was approved by HUD and went into effect on October 1, 1978. (Id. ¶ 34.)

According to the Complaint, HUD approved and funded annual rent increases until 2002 but did not increase the rents between 2002 and the expiration of Franklin's HAP Contract in 2008.

5

(Id. ¶¶ 66-67.) Franklin allegedly submitted a request to HUD in 2003 for a rent adjustment, but HUD denied the request because Franklin's contract rents exceeded the fair market rental value and Franklin failed to submit the required rent comparability study in support of its request. (Id. ¶¶ 68-69.)

On October 2, 2008, Franklin sued GTHA in the Superior Court of New Jersey, claiming that, as a result of HUD's refusal to grant rent increases to Franklin between 2003 and 2008, GTHA had breached its HAP Contract (the "State Action"). (Id. ¶¶ 78, 79.) GTHA moved to dismiss that action for failure to join HUD as an indispensable party, but the motion remains pending. (Id. ¶ 82.)

On February 16, 2012, GTHA commenced this action against HUD and Franklin, seeking a declaration that it did not breach its HAP Contract with Franklin. (Id. ¶ 90.) In the event that the Court determines the HAP Contract was breached, GTHA seeks a declaration that HUD breached the ACC and is liable for any judgment rendered against GTHA as well as costs and attorneys' fees. (Id. ¶¶ 92-100.) On April 2, 2012, Franklin filed counterclaims against GTHA for breach of the HAP Contract, and it also filed a crossclaim against HUD asserting HUD's liability to GTHA under the ACC. (Franklin's Answer ¶¶ 29, 31, 34, 37, 41, 44, 47, 50.)

6

HUD moved to dismiss GTHA's claims for indemnity, litigation costs, and attorneys' fees, while also arguing that GTHA's breach of contract claims were barred in part by the relevant statute of limitations. (Dkt. Ent. 23-1 at 1-2.) HUD also moved to dismiss Franklin's crossclaim for lack of standing. (Dkt. Ent. 27-1 at 1-2.) However, this Court administratively terminated HUD's motions in light of a concern that it did not have jurisdiction to hear GTHA's claims and sua sponte ordered the parties to address this question. (Dkt. Ent. 39.) After careful review of the parties' submissions, the Court finds that it does have subject matter jurisdiction to hear these claims. Accordingly, it reinstates HUD's motions to dismiss and denies them without prejudice as premature.

## II.   The Court Has Subject Matter Jurisdiction.

Before a court can consider the merits of a case, it must satisfy itself that it has subject matter jurisdiction over the claims at issue. See Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995) ("The general rule [is] that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte[.]"). Because GTHA has brought claims against both HUD and Franklin, and because Franklin has filed crossclaims and counterclaims against HUD and GTHA, the Court must separately

consider whether it has subject matter jurisdiction over each set of claims.

### A. The Court Has Jurisdiction Over the Claims Against HUD.

Where a plaintiff asserts a contract claim against the United States, the suit typically proceeds under the Big and Little Tucker Acts, which provide both a grant of subject matter jurisdiction and a waiver of sovereign immunity. See 28 U.S.C. § 1346; 28 U.S.C. § 1491(a)(1). The Little Tucker Act, § 1346, provides concurrent jurisdiction to the district courts and the Court of Federal Claims for contract-based claims against the federal government seeking an amount less than $10,000. The Big Tucker Act, § 1491, provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[.]" Many courts have misinterpreted this statutory language as granting the Court of Federal Claims exclusive jurisdiction for contract claims against the United States seeking more than $10,000. E.g. Hahn v. United States, 757 F.2d 581, 586 (3d. Cir 1985)("[T]he Tucker Act vests exclusive jurisdiction in the Claims Court . . . even if such claims could be brought within the terms of some other jurisdictional grant[.]"); New Mexico v. Regan, 745 F.2d 1318, 1322 (10th Cir. 1984); Saraco v. Hallett, 831 F.

8

Supp. 1154, 1160 (E.D. Pa. 1993). However, the Supreme Court has made clear that the Tucker Act does not exclude the possibility that contract claims may be brought under other jurisdictional statutes. See Bowen v. Massachusetts, 487 U.S. 879, 910 n.48 (1988).

In Bowen, the Supreme Court noted that it "is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act Claims for more than $10,000 . . . . That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." Bowen, 487 U.S. at 910 n.48; see also C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 119 (2d Cir. 1990)(holding that Claims Court jurisdiction is not exclusive, but often seems exclusive because "there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act"); Vill. West Assoc. v. Rhode Island Hous., 618 F. Supp. 2d 134, 138 (D.R.I. 2009) (finding the Tucker Act is not the exclusive basis for government contract claims); see also Transohio Sav. Bank v. Dir., Office of Thrift Supervision, 967 F.2d 598, 612 (D.C. Cir. 1992) ("[I]n Bowen, the Supreme Court [has] stated that Tucker Act jurisdiction is not exclusive,

specifically rejecting conventional wisdom on that point[.]"). Accordingly, this Court joins those courts that have already concluded the Tucker Act does not grant the Court of Federal Claims exclusive jurisdiction over federal contract claims.

Instead, a district court may hear a contract dispute between a contractor and a federal agency, so long as it finds: (1) a statutory waiver of the agency's sovereign immunity; and (2) a statutory grant of subject matter jurisdiction.[1] See Anselma Crossing, L.P. v. United States Postal Serv., 637 F.3d 238, 240 (3d Cir. 2011); Clark v. United States, 326 F.3d 911, 912 (7th Cir. 2003); Arford v. United States, 934 F.2d 229, 231 (9th Cir. 1991); C.H. Sanders, 903 F.2d at 117.

Here, all parties agree that this Court has jurisdiction over the claims against HUD because (1) Congress waived HUD's sovereign immunity pursuant to 42 U.S.C. § 1404a and (2) these claims involve a federal question under 28 U.S.C. § 1331.

---

[1] If the contract at issue is a procurement contract, then a district court is also bound by the Contract Disputes Act ("CDA"), codified at 41 U.S.C. § 7102, et seq., which may compel administrative remedies and deprive a district court of jurisdiction. See generally Anselma Crossing L.P. v. United States Postal Serv., 637 F.3d 238, 240-42 (3d Cir. 2011). The CDA covers all government contracts for "procurement" of "property" or "services." See 41 U.S.C. § 7102(a). Government subsidy contracts, such as the contracts at issue here, are not "procurement" and thus are outside the bounds of the CDA. See Newport News Shipbuilding & Dry Dock Co. v. United States, 7 Cl. Ct. 549, 553 (Cl. Ct. 1985)(distinguishing subsidy contracts from procurement contracts and finding a contract to subsidize ship building was outside the bounds of the CDA); New Era Constr. v. United States, 890 F.2d 1152, 1157 (Fed. Cir. 1989) (holding that Section 8 subsidy contract between HUD and a public housing authority was not a procurement contract within the meaning of the CDA, and thus the CDA did not apply).

### 1. Congress Waived HUD's Sovereign Immunity.

Courts have long held that Congress waives the sovereign immunity of federal agencies by enacting statutes that contain sue-and-be-sued clauses. See FDIC v. Meyer, 510 U.S. 471, 480 (1994) (finding that Congress waived the sovereign immunity of the Federal Savings and Loan Insurance Corporation by enacting a statute that empowered the agency "to sue and be sued"); Anselma, 637 F.3d at 240 (holding that statute allowing Postal Service to "sue and be sued" waived the Postal Service's sovereign immunity); A.L.T. Corp. v. Small Bus. Admin., 801 F.2d 1451, 1461-62 (5th Cir. 1986) (holding that "sue and be sued" clause waived the sovereign immunity of the Small Business Administration). Additionally, these waivers of immunity are liberally construed. Fed. Hous. Admin. v. Burr, 309 U.S. 242, 245 (1940); Pa. Dep't of Envtl. Res. v. United States Postal Serv., 13 F.3d 62, 65 (3d Cir. 1993) (applying rule of liberal construction to Postal Service sue-and-be-sued statute).

Here, Congress has empowered HUD to "sue and be sued only with respect to its functions under the United States Housing Act of 1937[.]"[2] See 42 U.S.C. § 1404a. Since HUD entered into

---

[2] Prior to 2009, HUD argued that the sued-and-be-sued clause of 42 U.S.C. § 1404a did not waive its sovereign immunity as to Section 8 contract disputes. See Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth., No. 08-C-2480, 2009 U.S. Dist. LEXIS 13519, at *26-30 (N.D. Ill. Feb. 23, 2009) (considering HUD's argument that § 1404a did not waive HUD's sovereign immunity on Section 8 contract dispute). However, HUD has since reversed its position, and it now acknowledges that § 1404a waives sovereign immunity.

the ACC contract with GTHA as part of its functions under Section 8, Congress has waived HUD's sovereign immunity with respect to the contract. See Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth., No. 11-1753, slip op. at 2 (7th Cir. Oct. 29, 2012) (holding § 1404a waives HUD's sovereign immunity); One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., No. 1-09-CV-00642, 2011 WL 2632433, at *13 (D. Me. June 24, 2011) (same); see also Cathedral Square Partners Ltd. v. South Dakota Hous. Dev., 875 F. Supp. 2d 952, 966 (D.S.D. 2012) (recognizing, without deciding, that § 1404a may waive HUD's immunity from suit on Section 8 contract disputes).

  **2. Subject Matter Jurisdiction Is Proper Under 28 U.S.C. § 1331.**

  Under 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; see also Doe v. Luzerne Cnty., 660 F.3d 169, 174 (3d Cir. 2011). An action brought pursuant to federal common law arises under the laws of the United States. Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 850 (1985); Bollman Hat Co. v. Root, 112 F.3d 113, 115 (3d Cir. 1997); Magnum LTL, Inc. v. CIT Grp./Bus. Credit, Inc., No. 08-CV-05345, 2009 U.S. Dist. LEXIS 32340, at *5 (D.N.J. Apr. 15, 2009) ("Federal question jurisdiction supports claims founded upon

federal common law as well as statutory origins."). In addition, it is "well settled that contracts to which the government is a party . . . are normally governed by federal law, not by the law of the state where they are made or performed." Grand Acadian, Inc. v. United States, 105 Fed. Cl. 447, 455 (2012); see also Boyle v. United Techs Corp., 487 U.S. 500, 504 (1980)("We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law."); United States v. Yusuf, 199 F. App'x 127, 130 (3d Cir. 2006)(same); United States Postal Serv. v. Sunshine Dev., Inc., 674 F. Supp. 2d 619, 624 (M.D. Pa. 2009)(applying federal common law to Postal Service contract); Hener v. United States, No. 2-1667, 2006 U.S. Dist. LEXIS 70845, at *5 (D.N.J. Sept. 29, 2006)(applying federal common law to a settlement contract between the United States and a private party); Cuyahoga Metro. Hous. Auth. v. United States, 57 Fed. Cl. 751, 763 (2003) (applying federal common law doctrine of unmistakability to Section 8 contract dispute between HUD and a PHA); Kimberly Assocs. v. United States, 261 F.3d 864, 867, 869 (9th Cir. 2001) (applying unmistakability doctrine as an exercise of federal common law); Park Props. Assocs., L.P. v. United States, 82 Fed. Cl. 162, 167 (2008) (applying federal common law to a Section 8

contract between HUD and private parties) (citing Nat. Australia Bank v. United States, 452 F.3d 1312, 1326 (Fed. Cir. 2006)).[3]

Because HUD is a federal agency, federal common law governs the ACC between HUD and GTHA. Accord Yusuf, 199 F. App'x at 130. Thus the claims asserted by GTHA, and the claims asserted by Franklin to the extent Franklin's claims are based on the ACC, arise under federal common law and are subject to this Court's jurisdiction under 28 U.S.C. § 1331. Accord Barnhill v. Pregent, No. 3-09-CV-0273, 2009 U.S. Dist. LEXIS 85141, at *15-16 (M.D. Pa. Sept. 16, 2009)(taking § 1331 jurisdiction over a contract on basis of federal common law, since the United States was a party to the contract).

Because Congress has waived HUD's sovereign immunity pursuant to § 1404a, and because § 1331 provides an independent basis of subject matter jurisdiction, the Court may exercise jurisdiction over the claims against HUD based on the ACC. Accord Anselma, 637 F.3d at 240.

---

[3] The Supreme Court's 2006 decision in Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677 (2006), does not alter the Court's opinion here. In Empire, the Supreme Court commented that "uniform federal law need not be applied to all questions in federal government litigation, even in cases involving government contracts[.]" 547 U.S. at 691. Subsequent courts, however, have continued to apply federal common law to federal contracts. See, e.g., Yusuf, 199 F. App'x at 130 (3d. Cir 2006); Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1245 (Fed. Cir. 2007)(surveying Supreme Court precedent and finding that the Supreme Court requires the application of federal common law to federal contracts); Barnhill v. Veneman, 524 F.3d 458, 470 (4th Cir. 2008); United States v. Cal. DOT, 693 F. Supp. 2d 1082, 1089 (N.D. Cal. 2009). Because Empire did not even involve a contract to which the United States was a party, this Court will continue to apply federal common law to federal contracts.

**B.    The Court Has Supplemental Jurisdiction Over All Other Claims.**

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); HB Gen. Corp. v. Manchester Partners, 95 F.3d 1185, 1197 (3d Cir. 1996). Claims are part of the same "case or controversy" if they "share significant factual elements." HB Gen., 95 F.3d at 1198; Peter Bay Homeowner's Ass'n v. Stillman, 294 F.3d 524, 534 (3d Cir. 2002). The claims need only revolve around a central fact pattern. HB Gen., 95 F.3d at 1198. Once the Court finds that it can exercise supplemental jurisdiction, the Court has the discretion to extend or decline to exercise jurisdiction. Peter Bay, 294 F.3d at 534; Burns v. Salem Tube, Inc., 381 F. App'x 178, 183 n.6 (3d Cir. 2010).

Here, in addition to the claims asserted by Franklin and GTHA against HUD, GTHA and Franklin assert claims and counterclaims respectively, arising out of the HAP Contract. (Compl. ¶¶ 89-90; Dkt. Ent. 13.) All of these claims share significant factual elements revolving around a central fact pattern – the tripartite contract agreement. (Compl. ¶¶ 1-4.)

GTHA's claims against HUD with respect to the ACC – over which this Court has jurisdiction – are all contingent on a finding by this Court that the HAP Contract was breached. (Id. ¶ 96.) In addition, the claims share common questions about the impact of Congress' 1994 amendments to the Section 8 housing program and HUD's implementations of these amendments. (Id. ¶¶ 53-57.) Because these claims are so intertwined with the claims against HUD that they form part of the same case or controversy, the Court will exercise supplemental jurisdiction over the claims between GTHA and Franklin. Accord One & Ken Valley Hous. Grp., 2011 WL 2632433, at *13 (finding, because the court already had original jurisdiction over a HAP Contract claim between the housing authority and landlord, it would exercise supplemental jurisdiction under § 1367 over the ACC claim between HUD and a housing authority).[4]

### III.  HUD's Motions to Dismiss Are Denied Without Prejudice.

Now that it is satisfied that it has jurisdiction to hear the claims, the Court turns to HUD's motions to dismiss. HUD moves to dismiss for failure to state a claim GTHA's claims for

---

[4] Other courts have relied on the federal ingredient doctrine to exercise jurisdiction over HAP Contract claims between PHAs and private landlords. Those courts have concluded that the HAP Contracts implicated a substantial federal question and thus arose under federal law for purposes of 28 U.S.C. § 1331. See One & Ken Valley Hous. Grp., 2013 U.S. App. LEXIS 9678, at *19-20 (finding HAP Contract contained a substantial federal question and thus satisfied § 1331); Vill. West, 618 F. Supp. 2d at 141 n.12 (same). Because this Court finds it has jurisdiction under 28 U.S.C. § 1367, it need not evaluate these claims under the federal ingredient doctrine.

indemnification (Count IV), as well as the claims for any litigation costs and attorneys' fees associated with GTHA's defense of the State Action (Counts II and III). Specifically, HUD argues that the ACC provides no contractual basis for an award of these fees and that such an open-ended obligation cannot be implied against the federal government. In addition, HUD argues any claims seeking damages for breaches that occurred prior to October 1, 2006 are barred by the statute of limitations. With respect to the counterclaims asserted by Franklin, HUD maintains that these claims must be dismissed for lack of standing as Franklin is neither in privity with HUD nor a third-party beneficiary to the ACC.

Both motions must be denied for the same reason—the issues presented are not ripe for adjudication. GTHA's claims and Franklin's counterclaims against HUD are all contingent on a finding that the HAP contract between GTHA and Franklin has been breached. (Compl. ¶ 93 ("GTHA seeks a declaration that, **in the event** that a court determines that the HAP contract with Franklin [] was breached, that HUD necessarily breached the ACC and is liable to GTHA for the entirety [of] any judgment rendered against GTHA." (emphasis added)); id. ¶ 96 (same); id. ¶ 100 ("If HUD caused GTHA to breach the HAP contract with Franklin [], then GTHA is entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to

17

remedy those breaches."); see also Counterclaim and Crossclaim, Dkt. Ent. 13 ¶ 31 ("Under the ACC, HUD is liable to GTHA for the entirety of any judgment rendered against GTHA . . . .").) As of now, the Court has made no such finding and no judgment has been entered against GTHA in either this action or the State Action.[5] If the Court determines that GTHA did not breach the HAP Contract, and enters judgment in favor of GTHA, then the claims brought against HUD will be rendered moot and the Court need not reach these issues. See Cummings v. Allstate Ins. Co., No. 11-02691, 2011 WL 4528366, at *9 (D.N.J. Sept. 30, 2011) ("Issuing a decision regarding the extent of damages available under Plaintiffs' Count I, breach of contract, would be purely speculative at this juncture, given that it has yet to be determined that a breach occurred. It is well established that a district court is not permitted to issue advisory opinions and

---

[5] Importantly, GTHA has not sought a declaration that HUD has a duty to defend GTHA with respect to the underlying state litigation involving Franklin, which may be an issue that the Court could consider at this juncture. Unlike a duty to defend against ongoing litigation, however, the duty to indemnify does not become ripe until judgment is entered against the party seeking indemnification. See, e.g., Kraemer Bros., LLC v. Sovereign Envtl. Grp., No. 09-2027, 2010 WL 148154, at *1 (E.D. Pa. Jan. 14, 2010) ("A duty to defend is separate and distinct from a duty to indemnify. It is undisputed that Kraemer has made no payment in the pending state court action—either in the form of a settlement or judgment—and that therefore an action to declare the parties' rights to indemnification would be premature and subject to dismissal. However, Kraemer also is asking for a defense, in addition to indemnity. The issue whether the duty to defend was activated by the state court action is ripe."); Union Tank Car Co. v. Aerojet-General Corp., 2005 WL 2405802, at *2-4, n.4 (N.D. Ill. Sept. 27, 2005) ("Where a claim of duty to defend is deemed ripe for adjudication, the duty to indemnify may not be ripe. Unlike the duty to defend, . . . 'decisions about indemnity should be postponed until the underlying liability has been established.'" (citations omitted)).

that there must be an injury-in-fact to adjudicate a dispute." (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992))); Harmelin v. Man Fin. Inc., No. 06-1944, 2007 WL 1521563, at *2 (E.D. Pa. May 23, 2007) (denying without prejudice motion to dismiss counterclaims as "legal issues are premature"); see also LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd., No. 11-1637, 2013 WL 314760, at *12-13 (D.D.C. Jan. 28, 2013) (finding dismissal of certain claims premature and denying contingent motion to dismiss without prejudice).

Furthermore, to the extent that GTHA seeks attorneys' fees and litigation costs associated with defending the State Action, GTHA has not put forth any argument that these fees should be distributed while that litigation is still ongoing and the Court finds no persuasive reason for so ordering. See Nelson v. Biogen Idec Inc., No. 12-7317, 2013 WL 1700918, at *4 (D.N.J. Apr. 19, 2013) ("The Court has considered the parties' positions and notes that if Plaintiff does not succeed in this litigation, this entire issue will be moot. Moreover, the parties have failed to convince the Court that addressing this issue, at this juncture, will have any effect whatsoever on the scope of discovery or on the litigation, as whole. Accordingly, the Court denies this aspect of Defendant's motion, without prejudice, as premature."); see also P.W. v. Del. Valley Sch. Dist., No. 09-cv-480, 2009 WL 5215397, at *5 (M.D. Pa. Dec. 29, 2009) ("The

court finds it premature to dismiss the claim for attorneys fees on this cause and will deny the motion to dismiss on this issue without prejudice to PDE raising the issue again in a motion for summary judgment.").

Therefore, the Court finds that HUD's motions to dismiss the contingent claims are premature and the motions are DENIED without prejudice.

## IV. Conclusion.

For the foregoing reasons, this Court will exercise jurisdiction over all claims in this action. The motions to dismiss (Dkt. Ents. 23, 27) will be reinstated and dismissed without prejudice.

                                                  s/ Renée Marie Bumb
                                                  RENÉE MARIE BUMB
                                                  United States District Judge

Date: August 2, 2013