[Doc. No. 72]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GLOUCESTER TOWNSHIP HOUSING AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN SQUARE ASSOCIATES and SHAUN DONOVAN, *Secretary, United States Department of Housing and Urban Development*<br><br>Defendants. | Civil No. 12-0953 (RMB/AMD) |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is Defendant/Cross-Defendant Shaun Donovan's (hereinafter, "HUD") motion pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) to resolve an issue of privilege concerning two (2) letters produced in discovery by Defendant/Counter-Claimant/Cross-Claimant Franklin Square Associates (hereinafter, "Franklin Square").[1] HUD generally contends that the disputed letters do not constitute information protected by the attorney-client privilege and, alternatively, that Franklin Square waived any applicable

---

[1] By letter dated June 27, 2014, Plaintiff Gloucester Township Housing Authority (hereinafter, "GTHA") asserts that it "joins" in HUD's motion. (See BRIEF *(Letter Brief) on Behalf of GTHA in Support of Motion for Determination of Privilege Claim Pursuant to F.R.C.P. 26(b)(5)(B)* [Doc. No. 76].)

privilege through production of the disputed letters in discovery. Defendant Franklin Square asserts that the information constitutes core attorney-client communications, and that Franklin Square's inadvertent disclosure of the information fails to operate as a waiver of the privilege. The Court decides this matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth herein, the Court grants HUD's motion.

This action generally arises out of the parties' "tri-partite contractual relationship" to provide subsidized residential housing pursuant to 42 U.S.C. § 1437f(a) (hereinafter, "Section 8").[2] (See Complaint [Doc. No. 1], ¶¶ 1-8, 26.) Plaintiff specifically alleges that Section 8 authorizes HUD "to enter into an [annual contributions contract] with a public housing agency ('PHA'), pursuant to which the PHA then enters into a [housing assistance payments] contract with the private landlord." (Id. at ¶ 20.) Plaintiff asserts in this action that it executed an annual contributions contract (hereinafter, "ACC") with HUD on August 22, 1977. (Id. at ¶¶ 32-35.) In connection with the ACC, HUD purportedly obligated the United States of America "to fund the annual housing assistance payments" provided to Franklin Square by Plaintiff pursuant to the housing assistance payments (hereinafter, "HAP") contract

---

[2] Plaintiff filed the initial complaint in this action on February 16, 2012. (See generally Complaint [Doc. No. 1].)

2

executed by Plaintiff and Franklin Square. (Id. at ¶¶ 32-35.) In a related state court action, Plaintiff asserts that Franklin Square alleges that Plaintiff breached the HAP contract by refusing to grant certain rent contract increases (id. at ¶ 79), and seeks "a judgment against [Plaintiff] for almost $1.8 million." (Id. at ¶ 80.) In this federal action, Plaintiff seeks a declaratory judgment that it did not breach the HAP agreement, and that HUD constitutes the solely liable party for any breach because HUD's breach of the ACC "necessarily" caused any breach of the HAP contract. (Id. at ¶ 85.) Plaintiff also seeks a declaration that HUD must reimburse Plaintiff for all fees and costs incurred in defending against the state court litigation and in connection with this federal litigation. (Id. at ¶¶ 89-97.)

The present privilege dispute concerns Franklin Square's production in discovery of two (2) attorney-client letters.[3] (See generally HUD's Brief in Support of its Fed. R.

---

[3] On April 29, 2014, HUD took the deposition of Scott Schaffer, Franklin Square's Federal Rule of Civil Procedure 30(b)(6) designee. (See Def. HUD's Br. [Doc. No. 73], 7.) By letter dated April 25, 2014, counsel for Franklin Square notified HUD and Plaintiff concerning the "inadvertent[] produc[tion]" of "privileged attorney-client communications" and "object[ed]" to any inquiry of Mr. Schaffer concerning the disputed letters. (Exhibit E [Doc. No. 72-2].) At the deposition, and subject to Franklin Square's privilege objection, HUD questioned Mr. Shaffer concerning the substance of the disputed letters. (See, e.g., Exhibit A [Doc. No. 72-1] (redacted transcript of Mr. Schaffer's deposition).) HUD generally asserts that this

3

Civ. P. 26(b)(5) Motion for Determination of Privilege Claim (hereinafter, "Def. HUD's Br.") [Doc. No. 73].) Specifically, the parties do not dispute that Franklin Square produced during discovery: (1) a June 25, 2003 letter from Mr. Scott Schaffer (the Managing Agent of Franklin Square) to Ms. Barbara Adams, Esquire; and (2) a July 15, 2003 response letter from Ms. Adams to Mr. Schaffer. (Id.) HUD, however, generally asserts that these letters fail to constitute information protected by the attorney-client privilege because they do not "disclose confidential client information necessary to obtain informed legal advice." (See Def. HUD's Br. [Doc. No. 73], 9.) Rather, HUD contends that the letters generically refer to certain non-privileged information, and that Ms. Adams' response fails to "implicate" the interests underpinning the attorney-client privilege. (Id. at 11-12.) In addition, HUD asserts that Franklin Square's production of these letters in discovery waives any applicable privilege, because Franklin Square failed to notify HUD and Plaintiff of the inadvertent disclosure for in

---

testimony contradicts certain prior admissions by Franklin Square and seeks to use this testimony as rebuttal. (See Def. HUD's Br. [Doc. No. 73], 5, 7-8.) The Court notes that the deposition testimony expressly concerns the substance of the disputed letters. (See generally Exhibit F [Doc. No. 73-4].) In light of the identical nature of the information, the Court concludes that resolving the privilege of the letters necessarily resolves any privilege issue concerning the testimony.

4

excess of three (3) months.[4] (See Def. HUD's Br. [Doc. No. 73], 6-7.)

Franklin Square asserts that the June 25, 2003 and July 15, 2003 letters constitute attorney-client communications because they memorialize communications wherein Plaintiff conveyed confidential client information and sought legal advice from its counsel. (See Defendant, Franklin Square Associate's Opposition to Defendant Shaun Donovan, Secretary of the United Sates Department of Housing and Urban Development's Motion for Determination of Privilege Claim (hereinafter, "Franklin Square's Opp'n") [Doc. No. 77], 4-8 on the docket.) In response to the parties' various discovery requests, counsel for Franklin Square certifies that Franklin Square produced "over 3,500 pages" of responsive documents.[5] (Declaration of Michael J. Zbiegien, Jr. [Doc. No. 77-1], ¶ 3.) Consequently, in light of the voluminous nature of the discovery in this litigation (and

---

[4] In support of the pending motion, HUD also relies upon Franklin Square's production of emails between Franklin Square and counsel in the state court litigation. (See, e.g., Def. HUD's Br. [Doc. No. 73], 6-7, 13.) However, Franklin Square "has [purportedly] not claimed" privilege with respect to these emails. (Id. at 7 n.3; see also Exhibit D [Doc. No. 73-3].) The Court also notes that the emails concern subject matter distinct from the disputed letters.

[5] HUD asserts that the production occurred in phases. (See Def. HUD's Br. [Doc. No. 73], 6.) Specifically, HUD asserts that Franklin Square produced approximately 2,390 pages of documents (including the two (2) letters) on January 22, 2014, followed by an additional 1,171 pages of documents on February 24, 2014. (See Def. HUD's Br. [Doc. No. 73], 6.)

5

the pendency of state court litigation[6]), counsel for Franklin Square certifies that "the two privilege letters were simply missed." (Declaration of Michael J. Zbiegien, Jr. [Doc. No. 77-1], ¶ 9.) Franklin Square further asserts that it took "immediate[]" measures to retrieve these documents upon "discovery" of their inadvertent production. (Id. at ¶ 5; Franklin Square's Opp'n [Doc. No. 77], 9-10 on the docket.)

In the context of the pending motion, the Court first determines whether the disputed letters fall under the protection of the attorney-client privilege. See, e.g., Smith v. Allstate Ins. Co., 912 F. Supp. 2d 242, 247 (W.D. Pa. 2012) (citations omitted) (employing a two-step analysis). The Court notes that the attorney-client privilege protects confidential communications between attorney and client in order to "encourage full and frank communication between attorneys and their clients."[7] Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981).

---

[6] Franklin Square asserts that this case arises out of New Jersey state court litigation, and that Franklin Square therefore used the "previously reviewed" and "produced" documents from the state court litigation for the purpose of discovery in this action. (Id.)

[7] Pursuant to Federal Rule of Evidence 501, when a case arises before a court under a federal question, as here, "the federal common law of privileges applies." Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc., 671 F.2d 100, 103 (3d Cir. 1982); see also FED. R. EVID. 501 (noting that "[t]he common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege"); 28 U.S.C. § 1346(a) (generally indicating that district courts have "original jurisdiction" over suits against the United States).

The attorney-client privilege applies if: "(1)the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by [the] client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994) (citing In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979) (citing U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950))).

Generally, disclosure of privileged information operates as a waiver of privilege. See, e.g., Graco, Inc. v. PMC Global, Inc., No. 08-1304, 2011 WL 666048, at *16 (D.N.J. Feb. 14, 2011). Inadvertent disclosure, however, does not constitute a waiver of the attorney-client privilege if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error,

7

including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." F~ED~. R. E~VID~. 502(b). Courts in this Circuit also consider the following factors in determining whether a party's disclosure waived privilege: (1) the "precautions taken to prevent inadvertent disclosure" given the extent of the document production; (2) the quantity of inadvertent disclosures; (3) the "extent" of the disclosure; (4) the extent of "any delay" and the "measures taken to rectify the disclosure[;]" and (5) any "overriding interests of justice[.]" Smith, 912 F. Supp. 2d at 247; see also D'Onofrio v. Borough of Seaside Park, No. 09-6220, 2012 WL 1949854, at *7 (D.N.J. May 30, 2012) (noting "that the approach set forth in FRE 502(b) is essentially the same as" the five (5) related factors). The disclosing party bears the burden to demonstrate that the elements of Federal Rule of Evidence 502(b) have been satisfied. See D'Onofrio, 2012 WL 1949854, at *7. Similarly, the burden of proving the existence of privilege rests "upon the party asserting the privilege." In re Grand Jury, 603 F.2d 469, 474 (3d Cir. 1979) (citation omitted).

  Here, the Court need not engage in any protracted inquiry concerning whether the disputed letters fall within the confines of the attorney-client privilege. The Court concludes the disputed letters clearly constitute communications "'made in confidence for the purpose of obtaining legal advice from the

8

lawyer.'" U.S. v. Rockwell Int'l, 897 F.2d 1255, 1264 (3d Cir. 1990) (quoting U.S. v. El Paso Co., 682 F.2d 530, 538 (5th Cir. 1982) (citation omitted) (emphasis in original)). Indeed, Mr. Schaffer's June 25, 2003 letter expressly requests counsel's advice, and Ms. Adams' July 15, 2003 letter, in turn, expressly provides such counsel.[8] (See Exhibit B [Doc. No. 73-1]; see also Exhibit C [Doc. No. 73-2].)

The Court must consider the effect, if any, of Franklin Square's production of these letters in the context of discovery in this litigation. Here, the parties do not dispute the inadvertent nature of the production. (See generally Declaration of Michael J. Zbiegien, Jr. [Doc. No. 77-1]; Def. HUD's Br. [Doc. No. 73], 12.) Indeed, counsel for Franklin Square certifies that Franklin Square "inadvertently produced" the letters, and HUD does not challenge that representation. (Declaration of Michael J. Zbiegien, Jr. [Doc. No. 77-1], ¶ 4; see also Def. HUD's Br. [Doc. No. 73], 12 (assuming that Franklin Square "'inadvertently' produced the disputed letters").) Rather, HUD challenges the nature of Franklin Square's precautions and the steps taken by Franklin Square in

---

[8] HUD further acknowledges that Ms. Adams' letter contains legal advice, but asserts that the privilege does not apply "simply because a statement conveys advice that is legal in nature." (Def. HUD's Br. [Doc. No. 73], 11 (citations omitted).) Here, having reviewed the letters, the Court concludes that the letters fall within the confines of the attorney-client privilege.

9

order to rectify its inadvertent disclosure. (See generally Def. HUD's Br. [Doc. No. 73], 12-14.) The Court therefore turns to five (5) factors governing whether Franklin Square's inadvertent disclosure waived the attorney-client privilege. See, e.g., Smith, 912 F. Supp. 2d at 247 (setting forth the applicable factors).

The Court first evaluates the "precautions taken" in order to prevent inadvertent disclosure. Smith, 912 F. Supp. 2d at 247 (citation omitted); see also FED. R. EVID. 502(b)(2). Here, Franklin Square provides minimal information concerning the manner in which Franklin Square reviewed discovery produced in this litigation for privilege. (See Franklin Square's Opp'n [Doc. No. 77], 9.) Franklin Square does not set forth the precautions taken, if any, to prevent the disclosure of privileged communications and/or documents. (Id.) Nor does it appear that Franklin Square designated the documents as "confidential" and/or "privileged" communications, and Franklin Square has not produced a privilege log. See also FED. R. EVID. 502(b)(2) (considering whether "the holder of the privilege or protection took reasonable steps to prevent disclosure"); but see Valentin v. Bank of N.Y. Mellon Corp., No. 09-9448, 2011 WL 2437644, at *1 (S.D.N.Y. May 31, 2011) (noting that plaintiff had "not identified any controlling or well-established case law" requiring "the disclosing party to reveal particular

10

details about the [privilege] review process as a threshold to satisfy Fed. R. [Evid.] 502(b)(2)"). Rather, Franklin Square merely relies upon the purportedly voluminous nature of the discovery in this action, and asserts that it produced the "previously reviewed and produced documents" from the prior state court litigation. (Id.) The Court therefore finds that Franklin Square has not demonstrated that it took reasonable steps in order to prevent inadvertent disclosure, and accordingly concludes that this factor favors a finding of waiver. See Peterson v. Bernardi, 262 F.R.D. 424, 429 (D.N.J. 2009) (finding plaintiff did not meet its burden concerning reasonable precautions where plaintiff failed to provide the court with basic details on the manner in which plaintiff reviewed its discovery production); Bensel v. Air Line Pilots Ass'n, 248 F.R.D. 177, 180 (D.N.J. 2008) (finding no reasonable precautions where the party failed to provide the court with information regarding precautions taken to avoid disclosure).

Another factor to consider is the number of inadvertently disclosed documents. See Smith, 912 F. Supp. 2d at 247 (citation omitted). Here, the Court notes that the pending motion primarily concerns three (3) pages of privileged information out of a document production of in excess of 3,500

11

pages.[9] (See Franklin Square's Opp'n [Doc. No. 77], 9 on the docket.) The Court accordingly finds the volume of inadvertent disclosures in this instance *de minimis*, and therefore concludes that this factor weighs in favor of upholding the privilege. See Smith, 912 F. Supp. 2d at 248 (finding the seven inadvertent disclosures "limited" given the "1,200 pages of documents" produced); Jame Fine Chemics., Inc. v. Hi-Tech Pharmacal Co., Inc., No. 00-3545, 2006 WL 2403941, at *4 (D.N.J. Aug. 18, 2006) (finding the disclosure of eighteen (18) total pages in the context of a several thousand page document production did not constitute a waiver); Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am., 254 F.R.D. 216, 219 (E.D. Pa. 2008) (finding the inadvertent disclosures equated to a marginal 1-2% of total documents produced); but see Ciba-Geigy Corp. v. Sandoz Ltd., 916 F. Supp. 404, 412 (D.N.J. 1995) (finding a privilege review of a "681 document" production "not impracticable" by the "standards" in December 1995).

The Court next evaluates the extent of the privileged information disclosed. See Smith, 912 F. Supp. 2d at 247 (citation omitted). In that regard, the Court notes that the disputed letters "warranted a significant level of scrutiny" prior to production, in light of the fact that the disputed

---

[9] Franklin Square specifically asserts that the inadvertent disclosures represent ".14% of the total document production." (Franklin Square's Opp'n [Doc. No. 77], 9 on the docket.)

12

letters set forth communications between attorney and client. Peterson, 262 F.R.D. at 429. The nature of the inadvertent disclosures therefore weighs in favor of a finding of waiver, particularly because the production concerns *clearly* privileged, substantive information pertaining to this litigation. Franklin Square directly transmitted attorney-client communications to HUD, without marking the documents as confidential, attorney-client communications. See Alers v. City of Phila., No. 08-4745, 2011 WL 6000602, at *2 (E.D. Pa. Nov. 29, 2011) (noting that the direct transmission of attorney-client communications favors waiver, whereas the production of an one-page email attached to "a multi-page document" may weigh against waiver given the indirect nature of the production). This factor accordingly favors a finding of waiver of the attorney-client privilege. D'Onofrio, 2012 WL 1949854, at *6 (finding the extent of the attorney-client disclosures significant).

   The Court also considers the extent of "any delay" and the "measures taken to rectify the disclosure[.]" Smith, 912 F. Supp. 2d at 247 (citation omitted); see also F<small>ED</small>. R. E<small>VID</small>. 502(b)(3). Here, Franklin Square asserts that it contacted Plaintiff and HUD immediately after realizing the inadvertent disclosure of the letters. (See Franklin Square's Opp'n [Doc. No. 77], 3 on the docket.) However, Franklin Square attempted to rectify the disclosures in excess of three (3) months *after* the

13

letters' production, and only "discover[ed]" the disclosure "while preparing" for Mr. Shaffer's deposition. (Declaration of Michael J. Zbiegien, Jr. [Doc. No. 77-1], ¶¶ 4-5; see also Franklin Square's Opp'n [Doc. No. 77], 10 on the docket.) The Court further notes that, for the purpose of discovery in this litigation, Franklin Square re-served a prior state court production, which production included the two (2) letters. (See Declaration of Michael J. Zbiegien, Jr. [Doc. No. 77-1], ¶¶ 7-8.) The disputed letters therefore appear to have been produced on *two separate* occasions. The Court therefore finds Franklin Square's delay significant, and accordingly concludes that this factor favors a finding of waiver. See Ciba-Geigy Corp., 916 F. Supp. at 414 (finding that proper screening would have prevented the second disclosure of documents, thereby finding the fourth factor in favor of waiver); Bensel, 248 F.R.D. at 180-81 (finding it significant that plaintiffs filed a protective order almost a full year after realizing the disclosure of privileged documents).

      Finally, the Court considers the "overriding interests of justice[.]" Smith, 912 F. Supp. 2d at 247 (citations omitted). Franklin Square asserts that "justice requires" that the Court deem the disputed documents privileged, "[g]iven the minimal extent of the inadvertent disclosure" and Franklin Square's prompt efforts "to remedy the situation once

14

discovered[.]" (Franklin Square's Opp'n [Doc. No. 77], 10 on the docket.) Notwithstanding Franklin Square's assertions, Franklin Square has not demonstrated with sufficient specificity why "justice requires" maintenance of the attorney-client privilege. (Id.) Nor does the Court find that the "overriding interests of justice" weigh against a finding of waiver. Smith, 912 F. Supp. 2d at 247 (citations omitted). Rather, in light of the circumstances surrounding production of the disputed letters, the Court finds that this factor supports a finding of waiver. See Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 263 (E.D. Pa. 2008) (finding that defendant "point[ed] to no overriding interests of justice to excuse the consequences of producing privileged materials").

Franklin Square bears the burden to demonstrate that the elements of Federal Rule of Evidence 502(b) and the associated factors weigh against waiver of the attorney-client privilege. See D'Onofrio, 2012 WL 1949854, at *7. Here, however, the Court concludes that the factors favor a finding of waiver. The Court therefore finds that Franklin Square has failed to meet its burden to demonstrate that its production of the disputed letter does not constitute a waiver of attorney-client privilege. See Wise v. Wash. Cnty., No. 10-1677, 2013 WL 4829227, at *3 (W.D. Pa. Sept. 10, 2013) (finding that defendant failed to meets its burden to demonstrate "sufficient measures

to remedy [and avoid] [] inadvertent disclosure"); Peterson, 262 F.R.D. at 430 (finding that plaintiff's inadvertent production operated in part as a waiver of privilege). Consequently, for the reasons set forth herein, and for good cause shown:

IT IS on this 12th day of August 2014,

**ORDERED** that Defendant HUD's motion pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) [Doc. No. 72] shall be, and hereby is, **GRANTED**; and it is further

**ORDERED** that the following documents are not protected by the attorney-client privilege: the June 25, 2003 letter from Scott A. Schaffer to Barbara Adams, Esquire [Doc. No. 73-1]; the July 15, 2003 letter from Barbara Adams, Esquire to Scott A. Shaffer [Doc. No. 73-2]; and the April 29, 2014 Federal Rule of Civil Procedure 30(b)(6) deposition transcript from page 125, line 9, through page 134, line 7 [Doc. No. 73-4].

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb

16